**In the Interest of V.F., A Minor Child,**

**M.R. and J.R., Foster Parents, Appellants,**

**B.F. and K.F., Paternal Grandparents, Intervenors–Cross–Appellants.**

No. 91–1912.

Court of Appeals of Iowa.

July 30, 1992.

James D. Bruhn of Farwell & Bruhn, Clinton, for appellants.

Paul Macek of Dircks, Ridenour, Norman & Macek, Davenport, and Paul E. Pfeffer, Clinton, for intervenors, cross-appellants.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., and Judy Sheirbon, Asst. Atty. Gen., for appellee State.

Kenneth F. Schoehauer, Clinton, for appellees natural parents.

Thomas R. Mayer, Clinton, for appellee guardian ad litem.

Heard by OXBERGER, C.J., and DONIELSON and SACKETT, JJ.

SACKETT, Judge.

This is an appeal by foster parents and paternal grandparents from a juvenile court's permanency order determining the parental rights of Valorie Freeman [1] should not be terminated and Valorie should be permanently placed in the care of her maternal grandmother. We determine the foster parents do not have standing to challenge the State's and guardian ad litem's refusal to seek termination of parental rights. We affirm the placement with the maternal grandmother.

Valorie, born on January 18, 1990, was removed from her parents' care on February 2, 1990. When it became clear Valorie could not be returned to her parents' care, the State first sought to terminate Valorie's parents' parental rights, but later dismissed the petition for termination and sought a permanency order. A permanency order was entered in December 1991. The permanency order placed Valorie with her maternal grandmother who has custody of Valorie's younger brother, Craig,[2] born in March 1991. It is from this order appeal is taken.

Appellants, M.R. and J.R., the foster parents who want to adopt Valorie intervened in the permanency proceedings. Valorie's foster parents alleged in the juvenile court that parental rights should be terminated and the juvenile court should direct the State or the guardian ad litem to file a petition to terminate parental rights. Valorie's foster parents also contended if parental rights were not terminated, Valorie should be placed in their care permanently. The foster parents on appeal raise these same issues. Furthermore, after the briefing was completed and the case was transferred to this court, the foster parents filed a motion for a limited remand contending the issue of the maternal grandmother's ability to care for Valorie should be reexamined by the juvenile court because there was new evidence about the grandmother's parenting abilities, and the additional evi-

---

1. V.F. are the child's initials. Valorie Freeman is not her given name.

2. C. is the child's first initial. Craig is not his given name.

dence was relevant to the issue of whether termination of parental rights was in the best interest of Valorie. The motion for limited remand was directed to be decided after oral argument. We will consider the motion with this appeal.

The guardian ad litem challenges the standing of the foster parents to intervene in the permanency matter and to appeal to the supreme court. The foster parents contend the issue of their right to appeal cannot be raised now because they were parties in the juvenile court.

We first consider the guardian ad litem's challenge to the standing of the foster parents to appeal from the refusal of the juvenile court to order a petition for termination of parental rights be filed. The guardian ad litem's challenge to the standing of the foster parents to appeal from the order placing Valorie in her maternal grandmother's home is a separate issue.

■ We determine the foster parents do not have standing to demand a petition to terminate parental rights be filed. Iowa does not recognize a protected interest in children by preadoptive or foster parents. *See Engstrom v. State*, 461 N.W.2d 309, 318–19 (Iowa 1990); *In re A.C.*, 415 N.W.2d 609, 615–16 (Iowa 1987). The Iowa court has indicated foster parents should not be a party to proposals that would make their foster care permanent. In *A.C.*, 415 N.W.2d at 614, the court said a paramount need of a foster child is "to be free from direct or indirect proposals by those sheltering them to make the association permanent." And in *A.C.*, 415 N.W.2d at 615, the court said, "It was crucial that the children be under the care of foster parents who could and would refrain from seeking to bond a permanent relationship."

Applying the direction of *Engstrom*, 461 N.W.2d at 315–16, and *A.C.*, 415 N.W.2d at 615, we agree with the guardian ad litem the foster parents do not have standing to petition the court to order a petition for termination of parental rights be filed. We, therefore, find it unnecessary to address the issue on appeal of whether the juvenile court should have ordered a peti-

tion be filed seeking termination of the natural parents' parental rights.

We recognize foster parents perform a difficult but very necessary service at a very minimal cost to the state. These foster parents have given Valorie excellent care and they have bonded with her. At one point, the foster parents were led to believe that parental rights would be terminated, and they may have had an opportunity to be an adoptive placement. This obviously has created a difficult situation for these foster parents who want children. The foster mother had twins that died at birth, and then she had surgery resulting in her being unable to bear children. The only criticism of the foster parents' care was they did not cooperate sufficiently with efforts to reunite the family.

■ We also find the foster parents were without standing to file the application for a limited remand. In the application for a limited remand, the foster parents contend there is new evidence relevant to the issue of whether termination of parental rights is in the best interest of Valorie. Because we have held the foster parents are without standing to challenge the termination issue on appeal, we deny the motion for limited remand which is resisted by the State. In doing so, we recognize the placement is always subject to review. The State and the guardian ad litem have received a copy of the foster parents' motion. It is incumbent on the State and guardian ad litem to investigate the facts supplied in the motion and, if they determine there is reason to review the placement, ask the juvenile court to do so.

■ The next issue is what is the best permanent placement for Valorie. The foster parents and the paternal grandparents challenge the placement with the maternal grandmother. We determine both the foster parents and the paternal grandparents have standing to challenge this issue.

■ We review de novo. Iowa R.App.P. 4. The question is whether in the placement ordered by the juvenile court the child will receive adequate care. *See In re I.L.G.R.*, 433 N.W.2d 681, 689 (Iowa 1988).

We must be assured Valorie is in an environment that is likely to bring her a healthy physical, mental, and social maturity. *See Lambert v. Everist,* 418 N.W.2d 40, 42 (Iowa 1988). The placement was recommended by workers with the Lutheran Social Services and the Iowa Department of Human Services. The placement is supported by the guardian ad litem and the natural parents. At the time of the placement, the grandmother had custody of a younger brother of Valorie, and placing Valorie in her grandmother's care will allow her to grow up with her brother. The maternal grandmother has been a parent and a foster parent. She is a minister and appears to have the support of the people of her church. She was determined able to provide an adequate home placement after an investigation was made of her home and living situation by the Montana Department of Human Services. The maternal grandmother is nearly fifty years old but in good health. One of the reasons the natural mother has been unable to care for her children is because she has Huntington's chorea, a degenerative disease, with no known cure. The disease is inherited. The maternal grandmother understands the disease.

The paternal grandparents argue the maternal grandmother is hindered in parenting because she is a single parent. They also argue she should not be a caretaker of Valorie because she is not a blood relative of Valorie because Valorie's mother is her child by adoption. The foster parents also argue the maternal grandmother is too old.

The natural parents ask that the maternal grandmother be the custodian because they feel if Valorie is in her care they will have the greatest opportunity for visitation and contact with Valorie.

The placement options available for Valorie all appear to be adequate. A review of the evidence convinces us she will have a proper home not only with her maternal grandmother but also with her former foster parents and her paternal grandparents. We recognize the maternal grandmother's home is not perfect, but we also note the foster parents have been determined to be adverse to reunification efforts, and there was evidence the paternal grandparents disciplined their own children by hitting them with a wooden stick.

There is nothing in this record that causes us to disagree with the placement decision made by the trial court. We affirm.

AFFIRMED.